PAID

1  Nicholas D. Jurkowitz, State Bar No. 261283
   Anne Schneider, State Bar No. 333408
2  FENTON LAW GROUP, LLP
   1990 S. Bundy Drive, Ste. 777
3  Los Angeles, California 90025
   Telephone:   310-444-5244
4  Facsimile:    310-444-5280

5
   *Attorneys for Qui Tam Relator/Relator*
6  *Michael S. Lee, M.D.*

7

8

**FILED**
CLERK, U.S. DISTRICT COURT

**FEB 17 2023**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ EEE _____ DEPUTY

9              **UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  UNITED STATES OF AMERICA; AND        CASE NO.
    THE STATE OF CALIFORNIA, EX
    REL. MICHAEL S. LEE, M.D.,           **COMPLAINT FOR:**
13
                                         **COMPLAINT FILED UNDER SEAL**
14              Plaintiff/Relator,       **PURSUANT TO 31 U.S.C. § 3730**

15       vs.                             **LACV23-01233-RGK-JPRx**

16  REGENTS OF THE UNIVERSITY OF         **DEMAND FOR JURY TRIAL**
    CALIFORNIA; UNIVERSITY OF
17  CALIFORNIA, LOS ANGELES;
    UNIVERSITY OF CALIFORNIA, LOS
18  ANGELES RONALD REGAN MEDICAL
    CENTER;
19
20              Defendants.

21

22

23

24

25

26

27

28

FENTON LAW
GROUP LLP

1

**COMPLAINT**

## COMPLAINT FOR VIOLATIONS OF THE FALSE CLAIMS ACT AND THE CALIFORNIA FALSE CLAIMS ACT

### I.    <u>INTRODUCTION</u>

1.    Qui tam Plaintiff/Relator MICHAEL S. LEE, M.D., (referred to hereinafter as "Dr. Lee," "Plaintiff," or "Relator") brings this action on his own behalf and on behalf of the United States of America and the State of California to recover civil damages and penalties under the False Claims Act ("FCA," 31 U.S.C. §§ 3729 *et seq.*) and the California False Claims Act ("CFCA," Cal. Gov. Code §§ 12650 *et seq.*), from Defendants the REGENTS OF THE UNIVERSITY OF CALIFORNIA ("the Regents"); THE UNIVERSITY OF CALIFORNIA, LOS ANGELES ("UCLA"); and UCLA RONALD REGAN MEDICAL CENTER ("UCLA Medical Center") (collectively, "Defendants").

2.    The violations of the FCA and CFCA arise out of claims for payment submitted to Medicare, beginning in or around 2008, or earlier, and continuing to the present day, by Defendants. Defendants knowingly and routinely made and/or presented fraudulent claims for reimbursement to Medicare, specifically for right-heart catheterizations ("RHCs") that were not supported by medical necessity. Defendants submitted various false claims, including claims falsely certifying that they were in compliance with 42 U.S.C. section 1395y(a)(1)(A) (medically necessary services).

3.    The False Claims Act provides that any person who violates the FCA is liable for a civil penalty of between $5,500 and $11,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990, for each such claim, and three times the amount of the damages sustained by the government. (31 U.S.C. § 3729(a)(1), 28 C.F.R. § 85.3(a)(9).) The FCA permits a person (known as a "relator" having information regarding such conduct against the government to bring an action on behalf of the government and to share in any recovery. (31 U.S.C. §§ 3730(b)(1), 3730(d).)   The complaint must be filed under seal, without service on the defendants. (31 U.S.C. § 3730(b)(2).) The complaint remains under seal for a period of time while the government conducts an investigation of the allegations in the complaint and determines whether to join the action. (31 U.S.C. § 3730(b)(2)-(4).)

4.    Pursuant to the FCA, Relator seeks to recover, on behalf of the United States and the State of California, damages and civil penalties arising from Defendants' defrauding of Medicare detailed below.

5.    The facts and circumstances which give rise to Defendants' violations of the False Claims Act have not been publicly disclosed within the meaning of 31 U.S.C. section 3730(e)(4)(A).

6.    In any event, Relator is the original source of most or all of the allegations in this Complaint, which was provided along with written disclosure of substantially all material evidence of the allegations of this Complaint to the United States pursuant to 31 U.S.C. section 3730(b)(2).

II.    **JURISDICTION AND VENUE**

7.    This action arises under the laws of the United States, the FCA. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. sections 1331, 1367 and 31 U.S.C. section 3732. This Court has jurisdiction over the CFCA claims because Defendant's violations of the CFCA arise out of a common nucleus of operative fact.

8.    This Court has personal jurisdiction over Defendants because each and every Defendant has minimum contacts, resides, and does business in the Central District of California.

9.    Venue in this District is proper pursuant to 28 U.S.C. section 1391 because Defendants reside in and do business in the Central District of California. At all times relevant to this Complaint, Defendants regularly conducted substantial business in this District.  All violations alleged in this Complaint occurred in this District.

III.    **PARTIES**

10.    The United States of America and the State of California are the real parties in interest as to the claims arising under the False Claims Act and the California False Claims Act, respectively, as set forth herein.

11.    Relator is a physician who is duly licensed to practice medicine by the State of

California, and who worked at all relevant times for the Defendants. Realtor is familiar with Defendants' business operations from the time he spent working at UCLA Medical Center. Further details regarding Relator and Relator's knowledge have been and will be provided to the United States.

12.     Relator is a board-certified interventional cardiologist who provided interventional cardiology procedures at Defendant's hospital and in the Catheterization Laboratory ("Cath Lab"). The Cath Lab is a specially fitted facility within the hospital that contains the necessary equipment and personnel to perform interventional procedures.

13.     Relator is informed and believes, and on the basis of such information and belief alleges, that at all times herein mentioned Defendant the REGENTS is a California non-profit formed under article IX, section 9 of the California Constitution.

14.     Realtor is informed and believes, and on this basis of such information and belief alleges, that at all times herein mentioned Defendant UCLA is a public, non-profit educational institution, exempt under the IRS Code Section 501(c)(3).

15.     Relator is informed and believes, and on the basis of such information and belief alleges, that at all times herein mentioned Defendant UCLA Medical Center is a publicly-owned hospital in the County of Los Angeles, business form unknown.

16.     Relator is informed and believes and accordingly alleges that each Defendant is an agent and employee of each and every Defendant and, in performing the acts alleged in this complaint, was acting in the course and scope of said agency and employment. Relator further is informed and believes and accordingly alleges that the agents and employees of each Defendant were acting within the purpose and scope of said agency and employment and on behalf of each other and each of the Defendants ratified and approved the acts of the other Defendants and of the agents and employees of the various Defendants.

## IV.     STATUTORY FRAMEWORK

17.     The California False Claim Act is substantially similar to the federal False Claims Act. For purposes of outlining statutory framework, the FCA is referenced with the understanding that the CFCA has mirroring provisions.

18.     To prove a claim under the FCA, a Relator, must show that the defendant has committed one or more of the various acts specified under 31 U.S.C. section 3729(a)(1), constituting the making of a "false claim." "Liability attaches upon proof that a false claim was made, regardless of whether the government suffered damage." (*United States ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 674 (9th Cir. 2018).)

19.     The elements of such a claim are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." (*U.S. ex rel. Hendow v. University of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006); *United States ex rel. Rose v. Stephens Institute*, 909 F.3d 1012, 1017 (9th Cir. 2018.)

20.     A typical claim actionable under the FCA is one where a claimant did not perform the service for which he seeks compensation or where the claimant did perform the service but overcharged the government. (*U.S. ex rel. Hopper v. Anton* (9th Cir. 1996) 91 F.3d 1261, 1266.)

21.     However, the FCA's reach is not limited to such claims. Under some circumstances, claims submitted for services actually rendered for the correct amounts may still be considered fraudulent and give rise to FCA liability if the services were rendered in violation of other laws. (*Id.* at 1266-1267.)

22.     A legally false claim occurs when a party certifies compliance with a statute or regulation as a condition to payment, without actually complying with said statute or regulation. (*Hendow, supra*, 461 F.3d at 1171.) A false certification may be expressly false or impliedly false. (*Ibid.*) A claim is legally false under an express certification theory when the party making the claim for payment expressly represents compliance with a statute or regulation. (*Ibid.*)

23.     A claim is legally false under an implied certification theory when a claimant makes no express statement regarding compliance with a statute or regulation, but by submitting a claim for payment, implies that it has complied with any preconditions of payment expressly contained in the relevant statutes or regulations. "[T]he implied false certification theory can be a basis for liability. Specifically, liability can attach when the defendant submits a claim for payment that makes specific representations about the goods or services provided, but knowingly

**COMPLAINT**

FENTON LAW
GROUP LLP

fails to disclose the defendant's noncompliance with a statutory, regulatory, or contractual requirement. In these circumstances, liability may attach if the omission renders those representations misleading." (*Universal Health Services, Inc. v. U.S.*, 136 S.Ct. 1989, 1995 (2016), see also 31 U.S.C.A. § 3729 *et seq.*)

24.   The most basic requirement for reimbursement eligibility under Medicare, Medicaid, Medi-Cal, and other government health care programs is that the service provided must be medically reasonable and necessary. (42 U.S.C. § 1395y(a)(1)(A), 42 U.S.C. § 1396 *et seq.*; 42 C.F.R. § 411.15(k)(1); *United States v. Rutgard*, 116 F.3d 1270, 1275-1276 (9th Cir. 1997) ["Participating providers are required to ensure that any services rendered to Medicare recipients are supported by sufficient evidence of medical necessity. 42 U.S.C. § 1320c-5(a)(1);" also noting that the CHAMPUS federal health insurance program for Department of Defense employees only covers medically necessary services and supplies, 32 C.F.R. § 199.4(a)(1)(i)]; *U.S. v. Popov*, 742 F.3d 911, 912-913 (9th Cir. 2014).) Submission of claims for services that are not medically necessary are fraudulent under the FCA. (*United States v. Chang*, 2018 WL 6011544 at *6 (C.D. Cal. June 1, 2018), *Frazier ex rel. U.S. v. Iasis Healthcare Corp.*, 392 Fed.Appx. 535, 537 (9th Cir. 2010); *United States ex rel. Polukoff v. St. Mark's Hospital*, 895 F.3d 730, 742 (10th Cir. 2018); *Maa v. Ostroff*, 2013 WL 1703377, at *20 (N.D. Cal. April 19, 2013).) The requisite level of medical necessity may not be met where a particular procedure was performed solely for profit. (*U.S. ex rel. Kneepkins v. Gambro Healthcare, Inc.*, 115 F.Supp.2d 35, 41-42 (D.Mass. 2000).)

## V.   FACTUAL ALLEGATIONS

### A. Medically Unnecessary Services

25.   Relator was hired by Defendants as an interventional cardiologist in or about 2006. From 2006 through June of 2021, Relator performed procedures in the Defendant's Cath Lab and was a member in good standing of the Defendant's medical staff.

26.   Based on his experience working in the Cardiology Department as an interventional cardiologist at UCLA Medical Center, Dr. Lee became aware that Defendants were

billing Medicare for unnecessary right-heart catheterizations ("RHCs").

27.    A RHC involves inserting a catheter into the heart and artery in the lung, putting the patient at risk for bleeding complications, and possibly death. A RHC is medically necessary when a patient has evidence of pulmonary hypertension ("PH"), which is elevated blood pressure in the artery of the lungs measured in the form of: pulmonary artery pressure ("PAP") or right ventricular systolic pressure ("RVSP"). The performance of RHC is endorsed by peer-reviewed research articles and guidelines only when PH is present.

28.    UCLA Medical Center performed thousands of RHCs overs decades on patients regardless of the fact that the patients' PAP and/or RVSP determined on echocardiography, which is an ultrasound of the heart and measures PAP and RVS, was measured as normal. UCLA Medical Center routinely performed RHCs without medical literature, data, and guidelines to support is performance. UCLA Medical Center's aforementioned misconduct led to the submission of false claims for payment to Medicare for this procedure.

29.    Dr. Lee became aware that the billing practices of UCLA Medical Center were possibly illegal in or around 2012. As early as 2018, Dr. Lee complained regarding the aforementioned illegal conduct, to colleagues at the UCLA Medical Center. Dr. Lee was ignored, and the aforementioned conduct continued. Dr. Lee is informed and believes that the conduct still continues.

30.    Relator is informed and believes, and on the basis of such information and belief, allege, that the facts that RHCs were not medically necessary in the first place, for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member. (42 C.F.R. § 411.15(k)(1)).

31.    Relator is informed and believes, and on the basis of such information and belief alleges, that Defendants submitted claims to Medicare for payment for the medically unnecessary RHCs.

32.    Relator, out of a concern that the RHCs could be endangering patient quality of care as well as patient health and safety without medical necessity, raised the issue of medically unnecessary RHCs with his colleague at UCLA Medical Centerin 2018. The issue was never

addressed nor resolved. It is Dr. Lee's impression that the practice of illegal billing continues as of the date of this Complaint.

**CLAIM I**

**VIOLATION OF THE UNITED STATES FALSE CLAIMS ACT**

**31 U.S.C. § 3729(a)(1)(A), (a)(1)(B), (a)(1)(G) and (a)(1)(C)**

**(Against all Defendants)**

33.      The allegations of the foregoing paragraphs are incorporated herein as if fully realleged.

34.      Defendants, directly and/or by and through their agents, officers, and employees, knowingly presented or caused to be presented, to officers or employees of the United States false claims for payment or approval in violation of 31 U.S.C. section 3729(a)(1)(A) for professional and technical services based on the prior Factual Allegations.

35.      Defendants, directly and/or by and through their agents, officers, and employees, fraudulently concealed and intentionally failed to report funds improperly received from the United States for devices and procedures in violation of 31 U.S.C. section 3729(a)(1)(G) based on the prior Factual Allegations.

36.      Defendants, directly and/or by and through their agents, officers, and employees, acted in violation of the False Claims Act for conspiring to commit a violation of the False Claims Act at 31 U.S.C. section 3729(a)(1)(A), and/or (G) in violation of 31 U.S.C. section 3729(a)(1)(C).

37.      In engaging in the conduct alleged above, each of the Defendants, acting either on their own behalf or through their agents, officers, and employees, acted knowingly or in reckless disregard of the truth, as defined in 31 U.S.C. section 3729, violated the False Claims Act.

38.      Defendants knowingly, or in reckless disregard of the truth, made or caused to be made false and/or fraudulent medical records to be presented for reimbursement, and knowingly or in reckless disregard of the truth presented or caused to be presented false and/or fraudulent claims for reimbursement to Medicare, a federally-funded health insurance program.

39.      Relators were working as physicians for Defendants when they came to have

FENTON LAW
GROUP LLP

-8-

**COMPLAINT**

1    knowledge of the false, fraudulent conduct.

2        40.    Defendants knew these claims were not in compliance with the federal and state

3    anti-kickback and physician self-referral laws for various reasons, including but not limited to the

4    fact that Relators and others known to Relators brought the aforementioned violations illegal

5    financial arrangement to Defendants' attention through oral and written communications between

6    [date range].

7        41.    The United States reimbursed Defendants for these false or fraudulent claims.

8        42.    As a result of Defendants' violation of 31 U.S.C. section 3729, the United States

9    has suffered damages in an amount to be determined at trial. "A person may bring a civil action

10   for a violation of section 3729 for the person and for the United States Government." (31 U.S.C.

11   § 3730(b).)

12                          **CLAIM II**

13                  **CALIFORNIA FALSE CLAIMS ACT**

14                    **(Cal. Gov't. Code § 12651)**

15                    **(Against all Defendants)**

16       43.    The allegations of the foregoing paragraphs are incorporated herein as if fully

17   realleged.

18       44.    The California False Claims Act (Cal. Govt. Code § 12650 *et seq.*) is substantially

19   similar to the federal False Claims Act. The language of California Government Code section

20   12651 tracks that of 31 U.S.C. section 3729.

21       45.    Defendants, directly and/or by and through their agents, officers, and employees,

22   knowingly presented or caused to be presented, to officers or employees of the State of

23   California, false claims for payment or approval in violation of California False Claims Act,

24   California Government Code section 12965(1)(a)(1) for professional and technical services based

25   on the prior Factual Allegations.

26       46.    Defendants, directly and/or by and through their agents, officers, and employees,

27   knowingly made, used, or caused to be made or used, a false record or statement material to a

28   false or fraudulent claim in violation of California Government Code section 129651(a)(2) for

**COMPLAINT**

FENTON LAW
GROUP LLP

professional and technical services based on the prior Factual Allegations.

47.     Defendants, directly and/or by and through their agents, officers, and employees, fraudulently concealed and intentionally failed to report funds improperly received from the United States for procedures in violation of California Government Code section 129651(a)(7) based on the prior Factual Allegations.

48.     Defendants, directly and/or by and through their agents, officers, and employees, acted in violation of the False Claims Act for conspiring to commit a violation of California Government Code section 129651(a)(1), (2), and/or (7), in violation of California Government Code section 129651(a)(3).

49.     In engaging in the conduct alleged above, each of the Defendants, acting either on his/her/its own behalf or through their agents, officers, and employees, acted knowingly or in reckless disregard of the truth, as defined in California Government Code section 129651, violated the False Claims Act.

50.     Defendants knowingly, or in reckless disregard of the truth, made or caused to be made false and/or fraudulent medical records to be presented for reimbursement, and knowingly or in reckless disregard of the truth presented or caused to be presented false and/or fraudulent claims for reimbursement to the State of California for state-funded health insurance programs.

51.     Relator was working as physician for Defendants when he came to have knowledge of the false, fraudulent conduct.

52.     Defendants knew these claims were not in compliance with the federal and state laws for various reasons, including but not limited to the fact that Relator brought the aforementioned violations illegal financial arrangement to Defendants' attention through oral and written communications as early as 2018.

53.     The State of California reimbursed Defendants for these false or fraudulent claims.

54.     As a result of Defendants' violations of California Government Code section 129651, the State of California has suffered damages in an amount to be determined at trial. "A person may bring a civil action for a violation of this article for the person…" (Cal. Govt. Code § 129652(c)(1).)

FENTON LAW
GROUP LLP

COMPLAINT

**PRAYER FOR RELIEF**

WHEREFORE, Relators pray for judgment as follows with respect to all causes of action:

1.     All damages, penalties, and proceeds applicable under 31 U.S.C. § 3730(d);

2.     All damages, penalties, and proceeds applicable under Cal. Govt. Code §§ 12652(g)(2)-(3);

3.     Attorney's fees and costs;

4.     Such other relief as the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Relators hereby demand a jury trial on all issues so triable.


DATED: February 17, 2023          FENTON LAW GROUP LLP

                                  By _____
                                     Nicholas D. Jurkowitz
                                     Anne Schneider
                                     Attorneys for Plaintiff/Relator

-11-

**COMPLAINT**